# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2133-19T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

O.C.,

     Defendant-Appellant,

and

T.J.D.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF E.D.,
a minor.

_____

Submitted October 13, 2020 – Decided October 21, 2020

Before Judges Sabatino and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0103-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Ilea Anne Kozak, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Laura Dwyer, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Melissa R. Vance, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

After a Title 30 guardianship trial, the Family Part terminated the parental rights of appellant O.C. ("the mother") and co-defendant T.J.D. ("the father") to their son, E.D.[1] The mother appeals, contending the Division of Child Protection and Permanency failed to present sufficient evidence to establish all four prongs necessary for termination under N.J.S.A. 30:4C-15.1(a). The father has not appealed his own termination. We affirm.

---

[1] We use initials to protect the minor's privacy pursuant to Rule 1:38-3(d)(12).

E.D. was removed from the mother upon his birth in August 2018 after both of them tested positive at the hospital for phencyclidine ("PCP"), a hallucinogenic drug. The mother admitted to using PCP while she was pregnant. She had a prior history of drug abuse known to the Division since the birth of her third child.

The parents had two other children together, an older son born in 2004 and a second son born in 2017. Both of those older siblings are being raised by their maternal grandmother, as well as a third child the mother had in 2007 with a different father.

Upon E.D.'s discharge from the hospital, the Division performed an emergency removal of him because of the drug abuse concerns and the parents' proven inability to care for the three older children.[2] The maternal grandmother was unable and unwilling to care for E.D., so he was initially placed in a non-relative resource home. The Division contacted other family members and friends, but all of them were ruled out as unsuitable or unwilling placements.

Several months later, in March 2019, the Division placed E.D. with a pre-

---

[2] The father was determined to be incapable of caring for the children on his own due to injuries and brain damage resulting from multiple gunshot wounds.

adoptive home, where he has been cared for ably since that time. The resource parent wishes to adopt him.

The Division provided the mother with numerous services, including drug treatment programs. Unfortunately, the mother failed to overcome her drug dependency and she continued to test positive in drug screens ordered by the court until a test done in October 2019, after which she refused all further screenings.

The Division arranged supervised visitation for the mother with E.D. Although she was observed to be affectionate with E.D. during these visits, the mother's behavior was repeatedly hostile and combative towards the Division's staff. There was at least one documented instance in which the mother appeared incoherent at the time of her scheduled visit.

Additionally, the mother was inconsistent with her attendance at the scheduled visits, missing more than half of them, despite being provided with transportation aid by the Division. As of the time of trial, the mother had not visited with E.D. in nearly eight months.

The mother refused to submit to a psychological or bonding evaluation by the Division's expert, Dr. Linda Jeffrey. Dr. Jeffrey did conduct a bonding evaluation of E.D. with his resource parent and found that he had a strong

4

attachment to her. The expert opined that termination of the parents' rights would not do more harm than good.

At trial, the Division presented expert testimony from Dr. Jeffrey and factual testimony from a Division case worker. The trial judge found their testimony to be credible and persuasive. The Law Guardian for E.D. did not present any witnesses, but joined with the Division in advocating for termination.

The mother did not present any opposing expert testimony or other witnesses. She did testify on her own behalf. She asserted she is capable of parenting E.D., and that her difficulties have been largely caused by the Division's own representatives. When asked by the trial judge whether she had remained clean since her last drug screen in October 2019, the mother evaded the query and said she would not submit to another screen until she saw her son again.

After sifting through the proofs, the trial judge, Honorable Francine I. Axelrad, issued a detailed oral opinion concluding the Division had satisfied all four prongs of the termination statute by clear and convincing evidence. Among other things, the judge noted the mother's long history of drug abuse, her relapses during the course of this litigation, and her inability to care for her three

older children. The judge found the Division had made reasonable efforts to locate other suitable caretakers and to provide the mother with services.

On the whole, the judge concluded that the child's best interests lie with being adopted by his resource parent, and that termination would do E.D. less harm than good. The judge particularly noted the uncontroverted expert opinions of Dr. Jeffrey, as well as the favorable results of the bonding evaluation with the resource parent.

In evaluating the mother's present arguments seeking reversal, we apply substantial deference to the Family Part judge's findings. A reviewing court should not "disturb the family court's decision to terminate parental rights when there is substantial credible evidence in the record to support the court's findings." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008). The reviewing court should defer to the trial court's findings of fact "if supported by adequate, substantial, and credible evidence in the record." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). As part of that review, the court must be especially mindful of the child's "essential and overriding interest in stability and permanency." In re Guardianship of J.C., 129 N.J. 1, 26 (1992).

Having applied these principles of review, we affirm the trial court's final judgment of guardianship, substantially for the sound reasons set forth in Judge Axelrad's comprehensive January 9, 2020 oral opinion. None of the arguments raised by the mother are legally or factually persuasive.

There was ample evidence in the record to support the judge's detailed findings on all four prongs of N.J.S.A. 30:4C-15.1(a). In particular, the mother's contention that the Division was responsible for her inability to enter a certain program at the Family Learning Center before the trial is inconsequential in light of the overwhelming evidence marshalled by the Division. Like the trial judge, we respect the mother's love for E.D., but she unfortunately has been unable to overcome her drug addiction that led to her three other children being removed from her care and this drug-exposed fourth child being removed at birth. The Division reasonably provided services and explored alternatives. The record demonstrates the child's best interests are with being raised by his pre-adoptive resource parent, as recommended by the sole and unrefuted expert witness.

To the extent we have not otherwise mentioned them, the mother's arguments lack sufficient merit to be discussed here with specificity. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7

A-2133-19T4